IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTOINE SHELTON DAVIS,                *

Petitioner,                           *

v.                                    *        Civ. No. DLB-22-3343

WARDEN ROBERT DEAN,                   *

Respondent.                           *

MEMORANDUM OPINION

Antoine Shelton Davis filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. ECF 1. Warden Robert Dean filed an answer to the petition, asserting the petition must be

dismissed because Davis's sole claim for relief is non-cognizable. ECF 8. No hearing is necessary.

*See* Rule 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2023);

*see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under

28 U.S.C. § 2254(e)(2)). For the following reasons, the petition is dismissed, and a certificate of

appealability shall not issue.

## I.     Background

On July 26, 2017, Davis was indicted in the Circuit Court for Harford County for attempted

first degree murder, first degree assault, conspiracy to commit first degree assault, and second

degree assault. ECF 8-1, at 5. Before trial, Davis filed a motion to suppress evidence seized from

his residence by the Harford County Sheriff's Office. *Id.* at 12–15. The state court held a hearing

on Davis's motion on November 13 and 20, 2017. ECF 8-2, 8-3. The following facts were adduced

at the hearing:

> Four police officers with the Howard County Sheriff Office testified for the State
> at the suppression hearing: Deputy Buttionz, Corporal Brian Potts, Detective
> Donald Kramer, and Detective Larry Defazio. Pictures of Coyner's injuries and

surveillance video seized from [Davis'] home pursuant to the warrant showing events outside and inside of [Davis'] home before the beating and after execution of the warrant were also admitted into evidence…

Around 9:15 p.m., on July 16, 2017, Deputy Buttion, Corporal Potts, and another officer responded to call for robbery and met Coyner near an apartment building in Edgewood, Maryland. Deputy Buttion and Corporal Potts noticed that Coyner was "actively bleeding" and had pronounced line-like red marks around his neck from an unknown object, blood on his head and arms, and more line-like red marks and swelling along his back and torso. Coyner reported that he had been assaulted at the rear of his friend's ground floor apartment and pointed to 1303B Cedar Crest Court, about 100 feet away. He explained that his friend, [Davis], had invited him over, and that when he arrived on his scooter, [Davis] invited him in through the back door. [Davis] and others he did not know were inside the apartment. After some time, he exited the apartment through the back door and was "jumped" by unknown persons. He lost consciousness and woke up some time later. He did not say that anyone else was assaulted. Deputy Buttion took pictures of Coyner's injuries, during which time emergency personnel arrived. Coyner was subsequently taken by ambulance to hospital.

Around 9:30 p.m., the three officers walked over to the apartment building where they observed Coyner's scooter. They knocked on [Davis'] front door multiple times, but no one responded. While one officer stayed in front, the others walked to the back of [Davis'] apartment where they observed fresh blood droplets on the concrete patio and a large blood spot, about six inches by three inches, less than two feet from the back door. The police also observed an outside surveillance camera pointed at the patio area. Although light was on inside the apartment and there appeared to be the flickering of television, no one answered the officer's repeated knocks on the windows and both back and front doors. Deputy Buttion photographed the area, and the photographs were admitted into evidence.

Because Corporal Potts observed that the blood spots went "[a]ll the way up to" the back doorway, he believed that the blood came from someone either entering or coming out of the back door. He was concerned that there were more victims and/or suspects inside, possibly armed, explaining that the silence coming from the apartment was equally consistent with it being empty or having a victim/suspect inside. Nonetheless, because of an unrelated, contemporaneous police incident occurring nearby, he sent officers to that incident leaving only himself at the rear and another officer at the front of the apartment to "hold the perimeter[.]"

About 10:45 p.m., the other incident had resolved, and officers involved in that incident were directed to the apartment. Detective Kramer, Sergeant Marzialli, and Corporal Potts convened by [Davis'] back door and after knocking and identifying themselves as police officers but getting no answer, they decided to make entry. Around 11:00 p.m., the officers kicked in the back door and with their guns drawn entered the apartment. A man, later identified as Robert Williams, was found under

2

blankets on a couch in the living room and was detained. There was blood in the dinette area and it appeared items were damaged. The police noted in plain view a belt in the bathroom sink that could have left the distinctive wound pattern on the victim. They did not locate anyone besides Williams and did not move or collect any evidence.

After "clearing" the apartment, a call was placed to Detective Defazio, who was with the victim at the hospital. After being advised by Detective Defazio that the victim's cell phone was missing, Detective Kramer called the number and a phone rang in the apartment under some clothing. After confirming it was the victim's phone, Detective Kramer asked Detective Defazio to secure a search warrant.

On his way to the police station to draft a warrant application, Detective Defazio stopped at the apartment. He noticed blood and a video surveillance camera on the back patio, blood on the dining room area carpet, and a belt in the sink. He returned to the police station about midnight to draft the warrant. Detective Defazio admitted on cross-examination that while at the hospital, Coyner had indicated that he was the only victim, although he had also said that there were others present in the apartment when he arrived. He had also indicated that the assault took place outside the apartment on the patio. While Detective Defazio wrote the search warrant, Detective Kramer questioned Williams about what had happened. During questioning, Williams told the detective about the video recording system inside [Davis'] home that videotaped both the inside and outside of the home. This information was relayed to Detective Defazio, who included it in the search warrant application.

The warrant was signed about 4:00 a.m. and subsequently executed. The police seized from the apartment, among other things, a home surveillance video recording system, Coyner's cell phone, a tire iron, and a belt. The search concluded at 5:25 a.m. Two CDs of surveillance footage taken from the video recording system inside the house were admitted into evidence. The first disc contained videotaped events inside and outside the apartment from 8:00 p.m. to midnight, and the second disc contained videotaped events inside and outside the apartment from midnight to 4:13 a.m. The warrant application/affidavit and the inventory return listing the seized evidence were also admitted into evidence.

Corporal Potts explained that the two or so hour delay between arriving and making entry was because "our manpower was stretched very thin due to other calls." He testified that had they had the manpower they would have made entry when they arrived, explaining that "the sooner we can make entry the better for anybody concerned." Detective Kramer testified that securing warrant can take as little as an hour and half or as long as four hours, explaining that he decided not to wait for a warrant because he thought "there was exigency. I felt we needed to go in immediately." He testified that because of the blood on the back porch in close proximity to the back door, he thought there could be someone inside that needed assistance. He elaborated:

The fact that we didn't have all of the pieces to the puzzle. We simply didn't know exactly what we had. We were going off of very limited information. The information we were getting from the hospital wasn't all that certain. The victim did not seem to have clear picture of what happened to him which in and of itself told me that there could have been other victims. And the way that the house was left with all of the lights on. Not knowing, quite frankly, where the other side of this altercation was. The other party could have been in there injured the same or worse as the victim at the hospital. We simply didn't know at that time.

ECF 8-1, at 122–26.

The state court denied Davis's motion to suppress, concluding that the Sheriff's Department entered Davis's home to make sure there were no additional victims inside, and the independent source exception to the exclusionary rule applied because the subsequent warrant was supported by probable cause that did not include information law enforcement had learned from the warrantless entry. ECF 8-3, at 69–76. Davis was tried by a jury from January 30, 2018 through February 7, 2018, and the jury found him guilty of first degree assault and conspiracy to commit first degree assault. ECF 8-10, at 195. On March 30, 2018, the state court sentenced Davis to two consecutive 25-year terms of imprisonment, each with all but 18 years suspended. ECF 8-11, at 21–22.

Davis appealed his conviction and the denial of his motion to suppress to the Appellate Court of Maryland. ECF 8-1, at 23–59. The Appellate Court of Maryland found that the trial court erred because it failed to make an express finding that the officers would have sought a warrant without the warrantless entry, and absent such a finding, the court could not determine the constitutionality of the subsequent search of the residence. *Id.* at 135–36. The Appellate Court of Maryland further concluded that it was appropriate to order a limited remand for the circuit court to hold a plenary hearing because the warrant that ultimately was issued was supported by probable cause without the information that had been obtained from the warrantless entry. *Id.*

4

On remand, the circuit court held a hearing at which Detective Larry DeFazio testified that he would have sought a warrant pursuant to normal police protocols even if he had not received information about the warrantless entry. ECF 8-12, at 21–22. Based on the evidence at the hearing, the court found that the Sheriff's Department would have obtained a warrant even without the warrantless entry and denied the motion to suppress. *Id.* at 52.

Davis filed a second appeal to the Appellate Court of Maryland, arguing that the limited remand was not appropriate and, alternatively, that the circuit court erred in denying his motion to suppress. ECF 8-1, at 197–226. The Appellate Court of Maryland found that reconsideration of the propriety of the remand was barred by the doctrine of law of the case, *id.* at 307–08, and that the circuit court did not abuse its discretion because the independent source doctrine, an exception to the exclusionary rule, applied, *id.* at 309–12.

Davis filed this federal habeas petition on December 22, 2022, asserting a single claim for relief: The state courts improperly adjudicated his motion to suppress. ECF 1, at 7–8. The respondent filed an answer, arguing that the petition should be dismissed because Davis's claim is non-cognizable in federal habeas review.

## II.     Standard of Review

This Court may grant a petition for a writ of habeas corpus to remedy violations of the United States Constitution or laws of the United States.  28 U.S.C. § 2254(a) (2018); *see Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Absent the violation of a constitutional right or federal law, a federal

habeas petitioner does not state a cognizable claim for relief. *Wilson v. Corcoran*, 562 U.S. 1, 1 (2011) (holding "federal courts may not issue writs of habeas corpus to prisoners whose confinement does not violate federal law").

### III.    Discussion

In his habeas petition, Davis challenges the warrantless entry into his apartment. Federal habeas relief is not available for an alleged Fourth Amendment violation when a petitioner had a "full and fair opportunity to litigate" his Fourth Amendment claim in his state proceedings. *See Stone v. Powell*, 428 U.S. 465, 494 (1976); *Boggs v. Bair*, 892 F.2d 1193, 1199–200 (4th Cir. 1989); *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).[1] Though *Stone* did not define what it means to have "full and fair opportunity to litigate," the Fourth Circuit has offered the following guidance:

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell*, *supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court. Second, ... when the district court has made the "opportunity" inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell*, *supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

*Doleman*, 579 F.2d at 1265.

The state courts offered Davis the opportunity to raise his Fourth Amendment clam, and he fully availed himself of that opportunity. In a pre-trial hearing where he was represented by counsel, Davis challenged the validity of the warrantless entry into his home and the admission of

---

[1] The *Stone* Court limited federal habeas review over Fourth Amendment claims because the purpose of the Fourth Amendment's exclusionary rule is to deter misconduct by law enforcement officers and providing an additional avenue for the exclusion of evidence through federal habeas relief is unlikely to have any additional deterrent effect. *See Stone*, 428 U.S. at 490–92.

evidence seized as a result of that entry. On appeal, Davis, represented by counsel, raised the Fourth Amendment challenge again . Both the trial court and the appellate court addressed Davis's arguments, twice. Because Davis was provided with a full and fair opportunity to present his Fourth Amendment claim at the trial court and again on direct appeal, *Stone* bars this Court from considering his sole claim for relief.[2] *See Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) ("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court.").

## IV.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed. A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable

---

[2] To the extent Davis asserts a separate claim that the Appellate Court of Maryland erred in ordering a limited remand to the circuit court, such a claim is also non-cognizable in federal habeas review because it involves state appellate procedure. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.* Davis has failed to satisfy this standard. Therefore, a certificate of appealability shall not issue.

A separate order dismissing the petition and denying a certificate of appealability follows.

March 11, 2026
Date

Deborah L. Boardman
United States District Judge

8